IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

KEITH THARPE,             :
                               :
            Petitioner    :
                               :
        vs.             :                
                               :          NO: 5:10-CV-433 (CAR)
CARL HUMPHREY, Warden,   :
                               :
          Respondent  :

## <u>ORDER</u>

Pending before the Court is Petitioner **KEITH THARPE'S** Motion for Leave to

Conduct Discovery and Authorization and Payment of Necessary Expert Services.

(ECF No. 42).

## I. BACKGROUND

### A. Facts

The facts of this case were set forth as follows by the Supreme Court of Georgia:

> Tharpe's wife left him on August 28, 1990 and moved in with her
> mother. Following various threats of violence made by the defendant to
> and about his wife and her family, a peace warrant was taken out against
> him, and the defendant was ordered not to have any contact with his wife
> or her family. Notwithstanding this order, Tharpe called his wife on
> September 24, 1990 and argued with her, saying if she wanted to "play
> dirty," he would show her "what dirty was."

> On the morning of the 25th, his wife and her sister-in-law met
> Tharpe as they drove to work. He used his vehicle to block theirs and
> force them to stop. He got out of his vehicle, armed with a shotgun and

apparently under the influence of drugs, and ordered them out of their
vehicle. After telling the sister-in-law he was going to "f--- you up," he
took her to the rear of his vehicle, where he shot her. He rolled her into a
ditch, reloaded, and shot her again, killing her.

Tharpe then drove away with his wife.  After unsuccessfully trying
to rent a motel room, Tharpe parked by the side of the road and raped his
wife. Afterward, he drove to Macon, where his wife was to obtain money
from her credit union. Instead she called the police.

*Tharpe v. State*, 262 Ga. 110, 110-11 (1992) (footnotes omitted).

## B.  Procedural History

Tharpe was tried on January 2-10, 1991. *Id*. at 110 n.1.  The Jones County Jury

found him guilty of malice murder and two counts of kidnapping with bodily injury.

*Id*. at 110.  "Finding the presence of three aggravating circumstances . . . the jury

sentenced Tharpe to death for the murder.  *Id*.

Tharpe filed a motion for new trial on January 19, 1991 and the trial court denied

the motion on August 15, 1991.  *Id*. at 110 n.1.

Tharpe filed a notice of appeal and the Georgia Supreme Court affirmed his

conviction and sentence on March 17, 1992. *Id*. at 110-15.    Tharpe's motion for

reconsideration was denied on April 1, 1992.  (Resp't Ex. 26, ECF No. 12).  Tharpe filed a

petition for writ of certiorari in the United States Supreme Court, which was denied on

October 19, 1992. (Resp't Ex. 29, ECF No. 13).

Tharpe filed a Petition for Writ of Habeas Corpus in the Superior Court of Butts County, Georgia on March 17, 1993, and amended the petition on December 31, 1997 and again on January 22, 1998. (Resp't Ex. 30, 36, 38, ECF No. 13).  After the Butts County Superior Court held evidentiary hearings on May 28, 1998, August 24, 1998, October 1-2, 1998, December 11, 1998, December 23, 1998, and July 30, 2007, the court entered an order denying the petition on December 4, 2008.  (Resp't Ex. 48-49, 59, 63-64, 69-70, 72, 87-92, 107, ECF No. 14-19).

On January 30, 2009, Tharpe filed an application for a certificate of probable cause to appeal from the denial of habeas corpus relief.  (Resp't Ex. 109, ECF No. 19).  The Georgia Supreme Court denied this application on April 19, 2010.  (Resp't Ex. 111, ECF No. 19).

Tharpe filed a Petition for Writ of Certiorari in the United States Supreme Court and that Court denied the Petition on November 29, 2010.  (Resp't Ex. 112-14, ECF No. 19,).

On November 8, 2010, Tharpe filed his federal Petition for Writ of Habeas Corpus by a Person in State Custody in this Court. (ECF No. 1).

## II. STANDARDS GOVERNING DISCOVERY AND APPOINTMENT OF EXPERTS IN 28 U.S.C. § 2254 ACTIONS

### A.  Requests for Discovery

"[A] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6 of the Rules Governing § 2254 Cases in the United States District Courts ("Rule 6") provides that "a party requesting discovery must provide reasons for the request" and "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." The United States Supreme Court has explained that Rule 6 is to meant to be consistent with *Harris v. Nelson*, 394 U.S. 286 (1969).  *Bracy*, 520 U.S. at 909; *see also* Habeas R. 6 Advisory Committee's Notes.  Pursuant to *Harris*, a petitioner establishes "good cause" for discovery if "specific allegations before the court show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Harris*, 394 U.S. at 300.  "[G]ood cause for discovery cannot arise from mere speculation" and "discovery cannot be ordered on the basis of pure hypothesis." *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006).

In *Isaacs v. Head*, 300 F.3d 1232 (11th Cir. 2002), the Eleventh Circuit addressed the issue of discovery in 28 U.S.C. § 2254 cases and explained that a petitioner is not entitled to discovery if he was not reasonably diligent in his pursuit of discovery at the state level.  The Court held that in passing the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "Congress modified the discretion afforded to the

district court and erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing." *Id.* at 1248-49.   The Court found that Isaacs had not been "reasonably diligent in trying to develop the factual record while in state court" and the district court had, therefore, correctly denied his requests for both discovery and an evidentiary hearing. *Id.* at 1249.   According to the Eleventh Circuit, when a petitioner has not been reasonably diligent at the state level, he may obtain discovery in the district court only if he meets the stringent requirements of 28 U.S.C. § 2254(e)(2). *Id.*

The Eleventh Circuit addressed the issue of discovery again in *Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002).   During state habeas proceedings, Crawford obtained a Georgia Bureau of Investigation ("GBI") report that included information about various stains on a mattress, blankets, and clothing.   One day before the evidentiary hearing in the state habeas corpus court, Crawford filed a motion for independent serological testing on these items.   The state court denied the motion as untimely. *Id.* at 1328-29.

In his federal habeas action, Crawford again requested to have the items tested. The Eleventh Circuit explained that the district court correctly denied discovery because "Crawford failed to exercise sufficient diligence in seeking testing of items mentioned in the GBI report while in state court." *Id.* at 1329.   The Court held that "in light of both § 2254(e)(2) and Rule 6(a), we conclude that Crawford was not entitled to

have the items from the GBI report tested after bringing his case in the federal courts."
*Id*.

In both *Isaacs* and *Crawford*, the Eleventh Circuit denied discovery because the habeas petitioners failed to exercise sufficient diligence to obtain the sought-after discovery in the state courts and could not meet the stringent requirements of § 2254(e)(2).  Moreover, even prior to the enactment of AEDPA, courts denied requests for discovery if the habeas petitioners failed to adequately develop the information sought while their cases were pending in the state courts.  *See Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991) ("The State further points out that [the petitioner] made no request to the state post-conviction court to review the files . . . that he now deems critical, and that he had ample opportunity to seek these documents at the state post-conviction proceeding, but chose not to.  In sum, we think that [the petitioner] had opportunity to explore the files of the state, and that the district court was not in error for denying [petitioner's] discovery request.").

It appears that, as a practical matter, a recent United States Supreme Court case places further restrictions on discovery.  In *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), the Court made it clear that, "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so."  *Id*. at 1401.  The Court addressed whether habeas review "under

§ 2254(d)(1) permits consideration of evidence introduced in an evidentiary hearing before the federal court." *Id.* at 1398.  The Court held that when the state court has decided an issue on the merits, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*  Likewise, based on the plain language in the statute itself, review under § 2254(d)(2) is limited to "evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *Pinholster,* 131 S. Ct. at 1400 n.7.

While *Pinholster* addressed evidentiary hearings, district courts have found that "its linkage to . . . discovery . . . is unquestionably present."  *Coddington v. Cullen*, No. CIV-S-01-1290 KJM GGH DP, 2011 U. S. Dist. LEXIS 57442 at *2 (E. D. Cal. May 27, 2011) (explaining that "the extent of permissible discovery in a habeas corpus action, seemingly once settled, has been upset by the AEDPA ruling of . . . [*Pinholster*]").  After *Pinholster*, if the state court decided a particular claim on the merits, this court is not authorized to hold an evidentiary hearing in which new evidence is introduced to support that claim.  Thus, it would seem that obtaining discovery on that claim would be futile.  Courts faced with discovery requests post-*Pinholster* have explained:

> [A]ny new evidence unearthed during discovery in federal court and
> "later introduced in federal court is irrelevant to § 2254(d)(1) [and (2)]
> review."  In other words, if the state trial court adjudicated . . .
> [petitioner's claims] on the merits, such that [p]etitioner must satisfy the
> terms of § 2254(d), "good cause" does not exist for the discovery

[p]etitioner seeks . . . because this Court may look only to the state court record in applying § 2254(d).

*Hurst v. Branker*, No. 1:10-CV-725, 2011 U.S. Dist. LEXIS 58910 at *23 (M.D. N.C. June 1, 2011) (quoting *Pinholster*, 131 S. Ct. at 1400)).

The Eleventh Circuit has not yet specifically addressed *Pinholster's* effect on discovery requests. However, that Court has held that when applying § 2254(d)(1) to a claim, a federal court cannot review an "expanded record" because its review is "limited to the claims presented to and the record developed by" the state courts. *Frazier v. Bouchard*, 661 F.3d 519, 528 (11th Cir. 2011).   Because this Court finds that Tharpe did not exercise sufficient diligence in seeking the requested discovery during his state habeas proceedings and that he has not shown "good cause" required under Rule 6, it does not determine whether, and to what extent, *Pinholster* would place additional limits on the requested discovery.

## B.  Requests for financial assistance

To the extent that Wilson is seeking financial assistance for experts, his requests are governed by 18 U.S.C. § 3599(f), which provides as follows:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under subsection (g).

*Id.*

Petitioner has not cited, and the Court has not found, any Eleventh Circuit case directly interpreting and applying this statute.  However, other circuits have held that habeas corpus petitioners are entitled to experts and investigators "only upon a showing of reasonable necessity."  *Rojem v. Gibson*, 245 F.3d 1130, 1139 (10th Cir. 2001).  Of course, if a petitioner has not shown good cause for the discovery he requests, he would not be entitled to an investigator to conduct the discovery or any experts to interpret the results of the discovery.

## III. THARPE'S SPECIFIC DISCOVERY REQUEST

Tharpe requests funds to retain experts "to assist him in proving, for this Court's potential *de novo* review, his mental retardation claim."  (Pet'r Br. at 9, ECF No. 43).  He explains as follows:

> [N]o finding has yet been made regarding whether Mr. Tharpe has established his mental retardation by any standard other than beyond a reasonable doubt. If this Court should find that the "beyond a reasonable doubt standard" is contrary to Supreme Court precedent, this Court may also decide it must determine whether Tharpe meets any other standard. Discovery would be appropriate in order to allow Petitioner to develop evidence in support of a showing of mental retardation to some other standard of proof, should this Court eventually deem that inquiry to be appropriate.

(Pet'r Br. at 4, ECF No. 43).

Specifically, he requests financial assistance to hire Ruth Luckasson[1] and other "experts who testified at [his] state habeas evidentiary hearing." (Pet'r Br. at 10, ECF No. 43). Petitioner explains that this discovery and these experts will "provide this Court with the testimony and evidence required to make *de novo* factual determinations, resolve those facts which the Attorney General may dispute, and, if necessary, to provide the basis for determining Mr. Tharpe's mental retardation under a standard other than 'beyond a reasonable doubt'." (Pet'r Br. at 10, ECF No. 43).

Tharpe presented his claim of mental retardation to the state habeas court. (Resp't Ex. 36, ECF No. 13).  On July 30, 2007, that court held an evidentiary hearing dealing solely with this issue.  (Resp't Ex. 87-92, ECF No. 17-18).  At that hearing, Tharpe called two mental health experts and his wife to testify. (Resp't Ex. 87-92, ECF No. 17-18).  Additionally he tendered into evidence approximately forty-one exhibits, including several affidavits from mental health professionals.  (Resp't Ex. 87-92, EFC No. 17-18).  Respondent called one mental health expert to testify and tendered approximately twenty-one exhibits.  (Resp't Ex. 87-92, ECF No. 17-18).  The state habeas court explained that it was "bound by the well-established Georgia law which states

---

[1] Ms. Luckasson is past President of the American Association on Mental Retardation, now the American Association on Intellectual and Developmental Disabilities; Chair of the University of New Mexico's Program for Mental Retardation; and Director of the University of New Mexico's full Special Education Program. (Pet'r Br. at 9., ECF No. 43).

that in order to establish his claim of mental retardation, Petitioner has to prove he is mentally retarded beyond a reasonable doubt." (Resp't Ex. 107 at 69, ECF No. 19). Using this standard, that state habeas court held that Tharpe was not mentally retarded and, therefore, his execution was not barred under *Atkins v. Virginia*, 536 U.S. 304 (2002). (Resp't Ex. 107 at 68-98, ECF No. 19).

Because the state court adjudicated this issue on the merits, the only questions for this Court are whether the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts <u>in light of the evidence presented in the State court proceeding</u>." 28 U.S.C. 2254 (d)(1) & (2) (emphasis added). The Eleventh Circuit recently upheld Georgia's reasonable doubt standard for mental retardation claims. The Court held that the Georgia Supreme Court did not violate any "clearly established" federal law by upholding Georgia's reasonable doubt standard for establishing mental retardation. *Hill v. Humphrey*, 662 F.3d 1335 (2011) (en banc). Unless *Hill* is overturned by the United States Supreme Court, the District Court is bound by the Eleventh Circuit's ruling. Therefore, this Court cannot conduct a *de novo* review of Petitioner's mental retardation claim under a standard other than beyond a reasonable doubt. (Pet'r Br. at 10, ECF No. 43). Any discovery related to, or expert testimony regarding, mental retardation under

11

a different standard would be completely irrelevant.  Thus, Tharpe has not established good cause for such discovery, nor established that expert services are reasonably necessary.

The Court also notes that there was nothing to prevent Tharpe from presenting testimony and/or affidavits from Ruth Luckasson, or any other mental health professional, at the state level.  As explained above, the state habeas court held an evidentiary hearing solely dealing with the issue of mental retardation.  Tharpe called two mental health experts to testify and tendered affidavits from mental health experts and lay people addressing the issue of his mental capacity.  Tharpe "does not explain why the discovery that he seeks now is any different from the discovery that was available to him in state courts."  *Isaacs*, 300 F.3d at 1250. As he was not "reasonably diligent" in obtaining testimony from Ms. Luckasson, he should not be allowed to obtain discovery from her during the pendency of this case in federal court as he has not met the narrow exceptions provided in 28 U.S.C. 2254 (e)(2). *Isaacs*, 300 F.3d at 1248-49; *Crawford*, 311 F.3d at 1329.

Moreover, to the extent that Tharpe seeks "funds to retain the services of the experts who testified at [his] state habeas evidentiary hearing," such funding is unnecessary because the Court has all of the records from the state habeas evidentiary hearing. Their testimony would be merely cumulative and redundant of the extensive

12

testimony that has already been provided in this case.  Therefore, Petitioner has not shown that their expert services at this stage are "reasonably necessary" under 21 U.S.C. § 848(q)(9).  *See Wright v. Angelone*, 151 F.3d 151, 163 (4th Cir. 1998) (explaining that the petitioner's "mental deficiencies were thoroughly investigated, presented to the jury, and ultimately resolved at trial.  Consequently, the district court did not abuse its discretion when it concluded that a fourth expert opinion was not 'reasonably necessary'.").

## IV. CONCLUSION

Based on the above, the Court **DENIES** Tharpe's Motion for Leave to Conduct Discovery and Authorization of Necessary Expert Services and instructs the parties to comply with the previously entered Scheduling Order (ECF No. 24) for future motions and briefs.

**SO ORDERED**, this 20th day of January, 2012.


S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT COURT


lnb